# EXHIBIT A

# EXHIBIT A

# Nonexclusive Sales Solicitation Agreement

This Agreement is made effective as of July 1 2006 (the "Effective Date"), by and between Revenue Enhancement Consultants, Inc. a Maine Corporation having its principal place of business at 48 Free Street, Portland, Maine 04101, USA and Mantra Films having its principal place of business at 1601 Cloverfield Blvd, Santa Monica, CA 90404

In this Agreement, the party who is contracting to receive services shall be referred to as "Marketer", and the party who will be providing the services shall be referred to as "REC". Marketer and REC may hereinafter be referred to individually as a "Party" and collectively as the "Parties".

REC has a background in telemarketing and consulting services for various marketing mediums and is willing to provide services to Vendor based on this background.

Vendor has a background in entertainment marketing and is willing to pay commissions for customers acquired by REC or its contacts.

Vendor and REC desire to enter into a non-exclusive agreement whereby REC shall solicit clients who are able to market or upsell marketer's products and acquire new customers for marketer.

Therefore, in consideration of the mutual covenants and agreements contained herein, the Parties hereby agree as follows:

1. **DESCRIPTION OF SERVICES.** Beginning on Effective Date, REC will solicit Vendor Agreements for Marketer. REC will actively market Vendor's Products and Services to its clients, its client base and to other potential users of the Vendor's Products and Services.

2. **PERFORMANCE OF SERVICES.**

   A. REC will use its best efforts to market and promote Vendor's Services to its client base and other Clients. REC may promote the Vendor Service using Telemarketing and other promotional efforts as the Parties mutually determine acceptable.

   B. The Parties recognize that there may be joint opportunities to market to prospective Clients and will use commercially reasonable efforts to facilitate such sales. Where one Party introduces a joint opportunity the other Party will not attempt to sell directly or independently to that opportunity for a period of 6 months after the introduction.

   C. The Parties agree to work together in identifying and pursuing promotional activities designed to enhance the upselling of Vendor's Services. Trademarks Servicemarks, logos, names and other corporate identifying items can be used only with the prior written consent of either party.

   D. REC shall use commercially reasonable efforts to obtain Vendor Service Agreements for Vendor Services. REC is not the agent of Vendor and has no authority to execute contracts for Vendor. All Vendor Service Agreements are solicited for presentation to the designated Vendor officer with authority to execute such agreements on behalf of

Vendor. The authorized representative of Vendor shall negotiate any and all price deviations from the standard pricing, as well as any other service deviations.

E. Neither Party will issue any press release or otherwise publicize the terms of this Agreement without the prior written consent of the other Party.

3. **COMMISSION PAYMENTS.** Vendor will pay commission payments to REC of $30.00 per valid customer acquired. A valid customer is defined as a consumer who accepts an order handling and agrees to the trial club membership. This customer must have a name, phone number, address and valid credit card that accepts the initial charge.

A. Payment Schedule. The commission payments will be calculated and made within fifteen calendar days of Vendor's receipt of new member enrollments from approved clients.

B. Accounting. Vendor shall maintain records in sufficient detail for purposes of determining the amount of the commission. Vendor shall provide to REC a written accounting that sets forth the manner in which the commission payment was calculated.

C. Right to Inspect. REC, or REC's agent, shall have the right to inspect Vendor's records for the limited purpose of verifying the calculation of the commission payments once per calendar year, subject to such restrictions as Vendor may reasonably impose to protect the confidentiality of the records. Such inspections shall be made during reasonable business hours as may be set by Vendor.

4. **EXPENSE REIMBURSEMENT.** REC shall not be entitled to reimbursement from Vendor for any expenses without the prior approval of Vendor.

5. **SUPPORT SERVICES.** Vendor will not provide support services, including office space and secretarial services, for the benefit of REC.

6. **NEW PROJECT APPROVAL.** REC and Vendor recognize that REC Services will include working on various projects for Vendor. REC shall obtain the approval of Vendor prior to the commencement of a new project.

7. **TERM/TERMINATION.** The term of this agreement will be twelve months beginning the effective date described above and will automatically renew for another term of twelve months unless terminated by either party. This agreement will be terminated upon 30-day written notice to the other party.

A. If Vendor Terminates this agreement, the compensation payments will continue until the conclusion of REC's approved client's projects.

8. **RELATIONSHIP OF PARTIES.** The parties understand that REC is an independent contractor with respect to Vendor and not an employee, partner, agent, franchisee or joint venture of Vendor. Vendor will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of REC.

9. **EMPLOYEES.** REC's employees, if any, who perform services for Vendor under this Agreement shall also be bound by the provisions of this Agreement. At the request of Vendor, REC shall provide adequate evidence that such persons are REC's employees.

10. **INJURIES.** REC acknowledges REC's obligation to obtain appropriate insurance coverage for the benefit of REC (and REC's employees, if any). REC waives any rights to recovery from Vendor for any injuries that REC (and/or REC's employees) may sustain while performing services under this Agreement.

11. **INDEMNIFICATION.** The parties agree to indemnify and hold each other harmless from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against the other party that result from the acts or omissions of either party or either party's employees, if any, and either party's agents.

12. **LIMITATION OF LIABILITY.** EXCEPT FOR THE INDEMNITY OBLIGATIONS SET FORTH IN SECTION 11 ABOVE, IN NO EVENT WILL EITHER PARTY BE LIABLE FOR (a) ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING BUT NOT LIMITED TO SUCH DAMAGES ARISING FROM BREACH OF CONTRACT OR WARRANTY OR FROM NEGLIGENCE OR STRICT LIABILITY), INCLUDING LOSS OF PROFITS, REVENUE, DATA OR USE, OR FOR INTERRUPTED COMMUNICATIONS, INCURRED BY EITHER PARTY IN CONNECTION WITH THIS AGREEMENT, EVEN IF THE OTHER PARTY OR ANY OTHER PERSON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR (b) AGGREGATE DAMAGES OF ANY KIND IN EXCESS OF THE AMOUNTS PAID BY VENDOR TO REC HEREUNDER IN THE TWELVE MONTH PERIOD PRECEDING THE EVENT GIVING RISE TO LIABILITY.

13. **REPRESENTATIONS, WARRANTIES AND DISCLAIMER.** Each party warrants as follows:

A. **REPRESENTATIONS AND WARRANTIES OF VENDOR.** Vendor represents and warrants that, to the best of its knowledge, the Vendor Site, Vendor Services and the Vendor Content (collectively, the "Vendor Elements") do not infringe or violate any U.S. patent, copyright or trademark rights of any third Party. In addition, Vendor represents and warrants that its use of the Customer Information will be in compliance with all applicable laws and regulations, including all rights of publicity and privacy laws. Vendor represents that the User Documentation has been prepared to describe certain functionality of the Vendor Services for the purpose of assisting users of the Vendor's Services and Vendor makes no warranty or representation with respect to the user documentation other than that Vendor will use its best efforts to correct any defect or "bug" within Vendor Services and for which Vendor is responsible at its own expense.

B. **REPRESENTATIONS AND WARRANTIES OF REC.** REC represents and warrants that its use of the Customer Information will be in compliance with all applicable laws and regulations, including all rights of publicity and privacy laws.

C. **DISCLAIMER.** OTHER THAN THE FOREGOING, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES TO THE OTHER PARTY OR TO ANY PERSON OR ENTITY WITH RESPECT TO THE SERVICES, WEB SITES, MARKS, CONTENT OR OTHERWISE, AND EACH PARTY HEREBY DISCLAIMS ALL IMPLIED

WARRANTIES, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY OF DATA AND NON-INFRINGEMENT AND IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, REC EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTY REGARDING THE PERFORMANCE, AVAILABILITY, FUNCTIONALITY OR ANY OTHER ASPECT OF VENDORS SERVICES OR SERVICES VENDOR DEVELOPS OR PROVIDES HEREUNDER.

14. **ASSIGNMENT.** REC obligations under this Agreement may not be assigned or transferred to any other person, firm, or corporation without the prior written consent of Vendor. This Agreement will be binding upon and inure to the benefit of the Parties hereto and their heirs, executors, administrators, successors, legal representatives and permitted assigns.

15. **INTELLECTUAL PROPERTY.** This agreement does not give any rights to Vendor's intellectual property, whether existing or developed during the term of this agreement. Trademarks, Service Marks, Logos, Names or other items will remain the property of each respective party. REC shall not, either directly or through a third Party, decompile, reverse engineer, disassemble, or attempt to penetrate any of the Vendor Services.

16. **CONFIDENTIALITY.** Each Party undertakes to retain in confidence the non-public terms of this Agreement and all other non-public information and know-how disclosed pursuant to this Agreement which is either designated as proprietary and/or confidential or by the nature of the circumstances surrounding disclosure, ought in good faith to be treated as proprietary and/or confidential ("Confidential Information"); provided that each Party may disclose the terms and conditions of this Agreement to its immediate legal and financial consultants in the ordinary course of its business. Each Party agrees to use best efforts to protect its own confidential information. A Party's disclosure of Confidential Information as required by government or judicial order is not prohibited by this Agreement, provided that the disclosing Party gives the other Party prompt notice of such order and assists in the procurement of appropriate protective order (or equivalent) imposed on such disclosure. Nothing contained herein limits either Party's right to develop products independently without the use of the other Party's Confidential Information

17. **UNAUTHORIZED DISCLOSURE OF INFORMATION.** If it appears that either party has disclosed (or has threatened to disclose) information in violation of this Agreement, the other party shall be entitled to an injunction to restrain the disclosing party from disclosing, in whole or in part, such information, or from providing any services to any party to whom such information has been disclosed or may be disclosed. Neither party shall be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

18. **CONFIDENTIALITY AFTER TERMINATION.** The confidentiality provisions of this Agreement shall remain in full force and effect after the termination of this Agreement.

19. **SERVICES TO THIRD PARTIES.** The parties recognize that REC may provide services to third parties. However, the confidentiality provisions of this Agreement bind REC and REC may not use the information, directly or indirectly, for the benefit of third parties.

20. **FORCE MAJURE.** Each Party will not be liable for any failure to fulfill its obligations hereunder due to causes beyond its reasonable control, including acts or omissions of government or military authority, acts of God, shortages of materials, telecommunications failures (including any systemic Internet failures and any interruptions in services of Internet Service Providers), transportation delays, earthquakes, fires, floods, labor disturbances, riots or wars.

21. **NON-CIRCUMVENT OF APPROVED CLIENTS.** REC agrees that a prospective client is not considered to be an approved client until that client is approved, in writing, by Vendor. REC agrees to follow Vendor's approval process, which may change from time-to-time or transaction-by-transaction. Vendor agrees to provide details of their approval process and to notify REC when changes to the approval process occur. When a prospective client has been submitted to Vendor, Vendor agrees to promptly identify whether or not an active relationship already exists between the prospective client and Vendor. If Vendor denies the approval of the prospective client on the basis that an existing relationship is in affect, then Vendor agrees to provide the documentation necessary to demonstrate that active relationship. If the approval is denied for any other reason, Vendor agrees to provide the documentation necessary to justify its denial. Vendor agrees not to circumvent REC's relationship or commissions in any particular transaction that involves a client approved by Vendor.

22. **RETURN OF RECORDS.** Upon termination of this Agreement, REC shall deliver all records, notes, data, memoranda, models, and equipment of any nature that are in REC's possession or under REC's control and that are Vendor's property.

23. **NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or deposited in the United States mail, postage prepaid, addressed as follows:

If for REC:

Craig A. Handley
President
Revenue Enhancement Consultants, Inc
48 Danforth Street, Portland, Maine, 04101

If for Vendor:

Mantra Films, Inc.
1601 Cloverfield Blvd, Suite 420S
Santa Monica, CA 90404
ATT: Scott Barbour

Such address may be changed from time to time by either party by providing written notice to the other in the manner set forth above.

24. **ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

25. **HEADINGS.** Introductory headings used in this Agreement are solely for convenience of the parties and shall not be construed as limitations upon the contents of the paragraphs concerned.

26. **GENDER AND NUMBER.** In interpreting this Agreement, the masculine gender includes the feminine and neuter, the feminine gender includes the masculine, the neuter includes the masculine and feminine, the singular includes the plural and the plural includes the singular whenever the context so requires.

27. **AMENDMENT.** This Agreement may be modified or amended if the amendment is made in writing and is signed by both parties.

28. **SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

29. **WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

30. **ARBITRATION.** Any dispute arising under this Agreement will be submitted to binding arbitration under the rules then prevailing of the American Arbitration Association. Any judgment upon the reward may be entered and enforced in any court of competent jurisdiction. The parties shall each appoint one arbitrator to be a member of the panel. Should the two arbitrators not be able to agree on a choice of the third, then the American Arbitration Association shall make the appointment of a person who is neutral to the parties in controversy. The arbitration will be located in Henderson, Nevada. The written decision of the majority of the three arbitrators will be binding on both parties hereto. The prevailing party will be entitled to reimbursement of its reasonable attorney's fees and costs as part of the arbitration award plus reasonable travel and lodging and per diem of $30 if such arbitration was held in a city more than 75 miles from its corporate headquarters. The fees of the arbitrator(s) will be borne equally by the parties.

31. **APPLICABLE LAW.** The laws of the California shall govern this Agreement.

32. **COUNTERPARTS TO THIS AGREEMENT:** Each of the parties hereto agrees with each of the other parties hereto that this Agreement may be executed in as many counterparts as are necessary or convenient and such counterparts shall together constitute one agreement. If more than one counterpart is executed, each counterpart shall be treated as an original of this Agreement.

Party providing services for a commission:

Revenue Enhancement Consultants, Inc

By: _____   _____
    Craig A. Handley                                         Date
    President

Party receiving services and willing to pay commissions:

Mantra Films, Inc.

By: _____   _____
    Scott Barbour                                            Date

# EXHIBIT B

# EXHIBIT B

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Western Case Management Center*

November 24, 2008

6795 North Palm Ave, 2nd Floor, Fresno, CA 93704
telephone: 877-528-0880 facsimile: 559-490-1919
internet: http://www.adr.org/

**Via Electronic Mail Only**

John G. Osborn, Esq.
Bernstein Shur
100 Middle Street, 6th Floor
P.O. Box 9729
Portland, ME 04104-5029

Michael Burke
In-House Counsel
Mantra Films, Inc.
1601 Cloverfield Blvd. Suite 420 South
Santa Monica, CA 90404-4082

Robert Klass
General Counsel
Mantra Films, Inc.
1601 Cloverfield Blvd. Suite 420 South
Santa Monica, CA 90404-4082

Re:    79 147 00107 08
       Revenue Enhancement Consultants, Inc.
       and
       Mantra Films, Inc.

Dear Parties:

This will advise the parties the Association has confirmed the appointment of Rew Goodenow as arbitrator. Enclosed please find the arbitrator's duly executed Notice of Appointment and Notice of Compensation Arrangements.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days.

The arbitrator is available to conduct a preliminary hearing on the following dates (pacific time):

Tuesday, December 9th – anytime
Wednesday, December 10th, between the hours of 8–11a and 2:30 – 5:30p
Friday, December 12th, anytime

**Please provide your availability by noon tomorrow, November 25th.** If a response is not received by the Association by that time, we will assume all dates and times are acceptable and a preliminary hearing will be set.

Each party has been previously billed a deposit to cover the arbitrator's study and preparation time for this preliminary hearing, if payment hasn't already been remitted, the Association requests that be done forthwith and any checks are to be made payable to the American Arbitration Association. Please find a current invoice/statement attached.

Compensation to the arbitrator represents an independent obligation of the parties, and it is understood that the AAA has no liability, direct or indirect, for such payment.  Each party shall promptly deposit in advance with the AAA such sums of money as required by the administrator to defray the costs of the neutral's fees.   Compensation incurred will be deducted from deposits on hand, if any.

Sincerely,


Victoria M. Denny
Solutions Manager
559 490 1877
dennyv@adr.org

Enclosures:     Notice of Appointment and Notice of Compensation Arrangements.
                Invoice/Statement (to parties only)

cc:     Rew R. Goodenow, Esq.

# EXHIBIT C

# EXHIBIT C

04/07/2009  16:49    7753487258             PARSONS BEHLE LATIMR                  PAGE  02/05

1

2                               AMERICAN ARBITRATION ASSOCIATION

3                               COMMERCIAL ARBITRATION TRIBUNAL

4     In re Arbitration of,                          Case No.  79 147 00107 08 S1M

5     REVENUE ENHANCEMENT
      CONSULTANTS, INC.,                             **ARBITRATION AWARD**

6                   Claimant,

7         v.

8     MANTRA FILMS, INC.,

9                   Respondent.

10

11           I, Rew R. Goodenow, Esq., THE UNDERSIGNED ARBITRATOR, having been

12    designated in accordance with the arbitration agreement entered into between the above-named

13    parties and dated July 1, 2006, and having been duly sworn, and having duly heard the proofs and

      allegation of the Parties, do hereby, AWARD, as follows:
14
             This matter came on for hearing on April 2, 2009, before the undersigned Arbitrator, Rew
15
      R. Goodenow, in Las Vegas, Nevada.   Claimant Revenue Enhancement Consultants, Inc.
16
      ("Claimant") appeared through its counsel Erik S. Syverson of Pick & Boydston, LLP.
17
      Respondent Mantra Films, Inc. ("Respondent") appeared through its counsel John G. Osborn and
18
      Josh Silver of Bernstein Shur.   The parties consented to the service of the arbitrator, at the
19
      commencement of the hearing.
20
             All witnesses were sworn, prior to giving testimony.
21
      **Evidentiary Record**
22
             The following documents were admitted into evidence:  C1, C2, C3, C4, C5, C6, C7, C8,
23
      C9, C10, C11, C12, C13, C14, C15, C16, C17, C18, C19, C20, C21 and C22.  At the conclusion
24
      of the hearing, all exhibits were returned to the parties.
25
      **Findings of Fact**
26
             This dispute concerns marketing services provided by Claimant for Respondent, pursuant
27
28    to a Nonexclusive Sales Solicitation Agreement, dated July 1, 2006 ("Contract"), and payment for

PARSONS
BEHLE &
LATIMER    17901.002/4817-7955-4563.2

1   those services.  Claimant asserts that its services resulted in valid customers.  Both parties agree

2   that Respondents did not pay some of Claimant's billings.  Respondent alleges that as a result of

3   numerous order cancellations and credit card chargebacks the Claimant is not entitled to be paid,

4   because valid customers were not produced.  The parties agree that the Contract is valid.

5   Respondent paid Claimant in excess of $571,560 on the Contract.

6        **Claims**

7        The Claimant seeks damages for breach of contract and unjust enrichment.  Respondent

8   did not file a counterclaim.

9        **Conclusions of Law**

10       1.    The Contract provides that "Vendor [Respondent] will pay commission payments

11  to REC [Claimant] of $30.00 per valid customer acquired.  A valid customer is defined as a

12  consumer who accepts an order handling and agrees to the trial club membership."  Respondent

13  was obligated under the terms of the Contract to keep records sufficient to determine the

14  commissions due.  Responsibility for the records' inadequacy lies with Respondent.

15       2.    Claimant established that Respondent did not pay for 5,708 valid customers

16  generated through Claimant's services, for which Respondent owes Claimant one' hundred

17  seventy-one thousand, two hundred forty dollars ($171,240.00) ($30.00 per valid customer).

18       3.    Claimant has established a *prima facie* case of breach of contract and met its

19  burden of proof.

20       4.    Respondent failed to establish any affirmative defense.

21       5.    Respondent argued two defenses.  First, Respondent alleged that Claimant failed to

22  satisfy an implicit condition precedent to its recovery under the Contract, namely that it

23  performed its obligations under the contract.  Specifically, Respondent argues that Claimant

24  failed to satisfy its obligations under § 2 of the Contract by not putting forth commercially

25  reasonable efforts.  Claimant moved the arbitrator *in limine* to preclude this defense on the basis

26  that Respondent failed to respond timely to discovery and renewed the motion at the hearing on

27  the basis that, hypothetically speaking, if it did not examine its witnesses on this subject, then

28  Respondent would have no evidence.  The motion is moot.

PARSONS
BEHLE &
LATIMER

17901-002/4817-7955-4563.2                    - 2 -

1      Unfortunately for Respondent, its attack on Claimant's efforts through Claimant's

2  witnesses was not persuasive.  Claimant established several contacts and many orders.  In the

3  absence of reliable expert or other evidence that these efforts failed to meet some commercial

4  standard in the relevant industry, the Arbitrator does not have sufficient evidence that the

5  performance condition was unmet.  While it appears that some errors may have been made and

6  some certainly persisted in the evidence presented by Claimant, Respondent failed to connect the

7  alleged errors or failure to supervise (which it probably established) with any quantifiable number

8  of valid customers that might have been lost, or other evidence of materiality.  At best, it created a

9  generalized impression of sloppy work, but without prior complaint.

10      6.      Next, Respondent attempts to show that Claimant failed to mitigate its damages.

11  While both sides concede California law applies, neither side provided any legal authority to

12  guide the arbitrator as to the standards or tests that might be applied to either of the two defenses

13  in California.  The basic theory Respondent seems to pursue is that Claimant continued to

14  perform services, even after learning that Mantra's principal and only checking account signatory

15  had been incarcerated.  However, (a) this went on for only a couple of months, after a more than

16  one-year satisfactory payment history; (b) Respondent paid bills and even after its principal was

17  incarcerated; and (c) the Contract contains a thirty (30) day termination notice requirement.  The

18  mitigation defense also fails to persuade.

19      7.      Respondent chose the less expensive and more risky "activation model," thereby

20  contracting for the precise risk from which it now complains it suffered loss.

21      At the conclusion of evidence, and final arguments, the Arbitrator closed the hearing and

22  returned all original exhibits to the parties, as agreed at the commencement of the hearing.

23      **Award**

24      The undersigned Arbitrator awards damages against Respondent in favor of Claimant in

25  the amount of $171,240, on the breach of contract claim.

26      The administrative filing and case service fees of the AAA, totaling $4,000, shall be borne

27  as follows:  entirely by Respondent.

28

PARSONS
BEHLE &
LATIMER

17901-002/4817-7955-4563.2                              - 3 -

1    The fees and expenses of the arbitrator, totaling $4,721.73, shall be borne as follows:

2  entirely by Respondent.

3    Therefore, Respondent shall reimburse Claimant the sum of $6,360.87, representing that

4  portion of said fees and expenses in excess of the apportioned costs previously incurred by

5  Claimant.

6    Since Claimant pursued the Contract claim, the unjust enrichment claim is unavailable and

7  no award is made thereon.

8    Claimant also sought attorneys' fees, but failed to prove them at the hearing and so the

9  claim for attorneys' fees is denied.

10    This Award is in full settlement of all claims submitted to this Arbitration.  All claims not

11  expressly granted herein are hereby, denied.

12

13  DATED:  April 8, 2009.

14                                            REW R. GOODENOW, Arbitrator

15

16

17

18

19

20

21

22

23

24

25

26

27

28